# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 22-CV-05395 (BMC) (RER)

———————————————

### DAVID ALSTON

VERSUS

### CITY OF NEW YORK, ET AL.

———————————

**REPORT & RECOMMENDATION**

November 9, 2023

———————————

### TO THE HONORABLE BRIAN M. COGAN
### UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff David Alston ("Plaintiff") commenced this action on September 9, 2022, against the City of New York (the "City"), Joseph Franco ("Franco" or "Defendant"), John Volpe ("Volpe"), and John and Jane Doe 1 through 10, seeking relief for claims under 42 U.S.C. § 1983 ("Section 1983"), including violation of the right to fair trial, malicious prosecution, failure to intervene, supervisory liability, and municipal liability, along with supplemental state law claims. (ECF No. 2 ("Am. Compl.")). On July 18, 2023, Plaintiff, the City, and Volpe, notified the Court that they reached a settlement agreement and stipulated to dismiss the City and Volpe from the action. (ECF No. 31). Accordingly, the action proceeded only against Franco. Before the Court is Plaintiff's Motion for Default Judgment against Franco (ECF No. 22), which Your Honor referred to me for an inquest on June 20, 2023 (Order dated 6/20/2023). For the reasons set forth herein, I

respectfully recommend that Plaintiff's Motion be granted, and that Plaintiff be awarded $750,000 in damages and $23,776 in attorneys' fees and costs.

## **BACKGROUND**

I.    Plaintiff's Arrest & Incarceration

On May 15, 2005, Plaintiff was arrested for allegedly participating in an exchange of drugs for money with Franco, an undercover New York City Police Department ("NYPD") officer. (Am. Compl. ¶ 17). A second undercover officer, Volpe, was present and allegedly also made observations of the purported drug sale. (*Id.* ¶ 18). Volpe proceeded to arrest Plaintiff. (*Id.* ¶ 20). Thereafter, the Kings County District Attorney's Office prosecuted Plaintiff based on Franco's and Volpe's claims. (*Id.*). Plaintiff was detained on Rikers Island while his case was pending. (*Id.* ¶ 23). On or about May 26, 2005, "out of fear of a possible lengthier sentence if he fought his case through trial," Plaintiff pled guilty to criminal sale of a controlled substance in the fifth degree. (*Id.* ¶ 23). Plaintiff was twenty-four years old. (ECF No. 33 ("Inquest Tr.") at 7:11–13).

In lieu of a jail sentence, Plaintiff agreed to complete a twelve-to-eighteen month drug treatment program, although he was not using drugs. (*Id.* at 14:25–16:8). After spending approximately one month on Rikers Island, on June 9, 2005, Plaintiff appeared in court and was released to a drug treatment facility ("Daytop"). (*Id.* at 15:20–16:2; ECF No. 42 ("Suppl. Sub.") at 1). Before completing his program, in or around September 2005, Plaintiff absconded from Daytop and returned to live with his mother and sister in Brooklyn. (Inquest Tr. at 17:24–18:12; Suppl. Sub. at 1). In or around October 2005, Plaintiff was returned on a warrant and sent back to Rikers Island. (Inquest Tr. at 19:4–17). Plaintiff was taken back to Daytop in or around December 2005. (*Id.* at 20:8–12). In or around February 2006, Plaintiff again absconded and returned to

2

Brooklyn. (*Id.* at 20:19–21:6; Suppl. Sub. at 1). In or around August 2006, Plaintiff was again returned on a warrant and sent back to Rikers Island. (Inquest Tr.  at 21:7–18).

On May 17, 2007, Plaintiff was sentenced to one-and-a-half years of jail time followed by post-release supervision. (*Id.* at 22:10–19). While in the custody of the New York State Department of Corrections and Community Supervision, Plaintiff was transferred between a number of facilities. (*Id.* at 26:22–32:13; *see also* ECF No. 36). Plaintiff served a total of approximately sixteen months in prison and appeared in court on a total of approximately fourteen occasions. (Suppl. Sub. at 1). Finally, on April 2, 2008, roughly three years after his arrest, Plaintiff was discharged to parole to begin a one-year term of post-release supervision, which he completed successfully. (Inquest Tr. at 32:11–33:24).

## II.    Defendant's Indictment & Termination

In 2019, a grand jury indicted Franco on twenty-six criminal counts, including perjury and official misconduct, "after the Manhattan District Attorney's office initiated criminal charges against [Franco] based on the discovery of video footage which confirmed that [Franco] . . . had testified falsely to witnessing drug transactions, which had led to several false arrests and prosecutions." (Am. Compl. ¶ 13). Defendant was fired from the NYPD following an NYPD disciplinary trial. (*Id.* ¶ 14). In response to revelations regarding Defendant's misconduct, "District Attorney's Offices in Manhattan, Brooklyn, and the Bronx, vacated hundreds of convictions which had been based on the unreliable testimony of [D]efendant." (*Id.* ¶ 15). Plaintiff was "[o]ne of the many victims of [Franco's] perjury and false testimony." (*Id.* ¶ 16). On June 11, 2021, the Kings County District Attorney's Office moved to vacate Plaintiff's conviction, and the indictment and conviction against Plaintiff were dismissed and sealed. (*Id.* ¶ 24).

3

III.    Procedural History

Plaintiff commenced this action on September 9, 2022, alleging claims under Section 1983 and New York state law. (Am. Compl.). On December 20, 2022, Plaintiff served the Summons and Amended Complaint on Franco, care of the NYPD at 1 Police Plaza in New York, New York.[1] (ECF No. 14). Plaintiff's counsel, as well as counsel for the City and Volpe, confirmed to the Court that Franco authorized the NYPD at 1 Police Plaza to accept service on his behalf. (Order dated 8/15/2023). The Court held several conferences at which Franco did not appear. (Minute Entries dated 12/19/2022, 1/17/2023, 5/22/2023, and 5/31/2023). On June 20, 2023, counsel for the City and Volpe informed the Court that they reached a settlement with Plaintiff. (ECF No. 30).[2] On July 18, 2023, counsel for the City and Volpe filed a Stipulation of Dismissal. (ECF No. 31). In parallel, on February 1, 2023, the Clerk of Court entered default against Defendant. (ECF No. 19). On April 28, 2023, Plaintiff filed the Motion for Default Judgment. (ECF No. 22, *see also* ECF Nos. 23, 24). On July 19, 2023, I held an inquest hearing to assess what, if any, damages are owed to Plaintiff. (Minute Entry dated 7/19/2023; *see also* Inquest Tr.). On August 2 and October 2, 2023, Plaintiff filed post-hearing materials. (ECF Nos. 34 ("Post-Hearing Sub."), 36–40; Suppl. Sub.).

## DISCUSSION

I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure requires a "two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, a court

---

[1] At the Initial Status Conference on December 19, 2022, Your Honor permitted Plaintiff to effect service on Franco *nunc pro tunc*. (*See* Minute Entry dated 12/19/2022).

[2] Plaintiff, the City, and Volpe agreed to settle the case for $175,000. (Inquest Tr. at 4:10–13).

clerk must enter party's default after an affidavit shows that the alleged defaulting party has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must request a default judgment. Fed. R. Civ. P. 55(b). In granting a default judgment, the court must accept the plaintiff's well-pleaded allegations as true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court then determines whether the factual allegations, taken as true, constitute a valid cause of action. *City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981)). Additionally, although the court must accept a plaintiff's well-pleaded allegations as true, "[p]laintiffs bear the burden of alleging specific facts which would allow the Court to infer defendants' liability rather than mere 'labels and conclusions' or a 'formulaic recitation of the elements.'" *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *adopted by* 2015 WL 5561180 (Sept. 21, 2015).

Courts need not accept as true allegations concerning damages. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. A plaintiff must show with evidence "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* at 158–59. The court may rely on various types of evidence when determining damages, including "detailed affidavits," "documentary evidence," and the court's "personal knowledge of the facts, derived from presiding at trial." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The court may conduct an inquest hearing on damages and allow submission of accompanying materials prior or post-hearing. *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). Default judgment is limited to the amount and type sought in the pleadings. *Miguel v. Mi Bella Puebla Corp.*, No. 16-CV-1593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017) (citing

Fed. R. Civ. P. 54(c)) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."), *adopted by* 2017 WL 4838761 (Oct. 24, 2017).

II.   Liability

Under Section 1983, individuals may bring a private cause of action against persons "acting 'under color of state law'" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). "To establish a viable [S]ection 1983 claim, a plaintiff must show 'the violation of a right secured by the Constitution and laws of the United States' and that 'the alleged deprivation was committed by a person acting under color of state law.'" *Newkirk v. Cnty. of Suffolk*, No. 17-CV-2960 (MKB) (PK), 2022 WL 824137, at *4 (E.D.N.Y. Mar. 18, 2022) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015)). "[S]uits may only be brought against private individuals 'if, [and] only if,' a 'close nexus [exists] between the State and the challenged action.'" *Molina v. James*, No. 21-CV-3144 (RPK) (JMW), 2022 WL 813815, at *7 (E.D.N.Y. Mar. 17, 2022) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quotation marks and citation omitted)). Plaintiff seeks to impose liability against Defendant for claims of malicious prosecution under Section 1983 and New York state law, and for violation of the right to fair trial under Section 1983. (Am. Compl. ¶¶ 36–49; ¶¶ 69–73).[3] For the reasons discussed herein, Plaintiff has established liability as to each count.

---

[3] The Amended Complaint also contains causes of action under Section 1983 for supervisory liability and municipal liability, and under New York state law for (i) negligent screening, hiring, and retention; (ii) negligent training and supervision; and (iii) negligence via *respondeat superior*. (Am. Compl. ¶¶ 50–62, 74–84). These claims pertain only to the City and Volpe and not to the defaulting Defendant, and therefore need not be addressed herein. The same is true with respect to Plaintiff's claim under Section 1983 for failure to intervene, which pertains only to Volpe and not to the defaulting Defendant. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 390 (S.D.N.Y. 2021) ("A police officer cannot be liable on a failure to intercede theory . . . if he participates directly in the alleged constitutional violation[s].").

A. <u>Malicious Prosecution</u>

"Claims for false arrest or malicious prosecution[] brought under [Section] 1983 . . . are substantially the same as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quotations and citations omitted); *see also Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). Under New York law, the elements of a malicious prosecution claim are "(1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendant's actions." *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (quotation marks omitted) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

First, Plaintiff has alleged that Defendant falsified claims regarding Plaintiff and conveyed those claims to the Kings County District Attorney's Office. (*Id.* ¶ 20). This is sufficient to establish that Defendant "initiat[ed] proceeding[s]" against Plaintiff. *See Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) ("[a] police officer can . . . initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor."). Second, "[a]bsent an acquittal, the favorable termination element of a malicious prosecution claim requires plaintiff to demonstrate 'that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence.'" *White v. Abney*, No. 17-CV-4286 (MKB) (RER), 2019 WL 1298452, at *5 (E.D.N.Y. Mar. 21, 2019) (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018)). Here, once Defendant's misconduct was discovered, the King's County District Attorney's Office moved to vacate Plaintiff's conviction, and the indictment and conviction against Plaintiff were dismissed and sealed. (Am. Compl. ¶¶ 13–15; 24). These allegations are sufficient to establish that proceedings resolved in Plaintiff's favor, and that they affirmatively indicate Plaintiff's innocence.

Finally, Plaintiff has alleged that "Defendant[] initiated [Plaintiff's] prosecution with malice, and otherwise caused said prosecution to be commenced against [P]laintiff without probable cause." (*Id.* ¶ 21). Defendant was terminated from the NYPD following an NYPD disciplinary trial, at which an administrative judge found that Defendant had testified falsely under oath and recommended his termination. (*Id.* ¶ 14). Defendant allegedly manufactured the purported drug sale. (*Id.* ¶ 22). Therefore, Plaintiff has sufficiently pled a claim for malicious prosecution against Defendant.

B.   Violation of the Right to Fair Trial

"A denial of the right to a fair trial claim requires a plaintiff to prove that: 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'" *Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015) (quoting *Jovanovic v. City of N.Y.*, 486 F. App'x. 149, 152 (2d Cir. 2012) (summary order) (citation omitted)). The officer must have "knowingly falsif[ied] evidence." *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021) (citation omitted). Here, Plaintiff has alleged that Defendant, an NYPD officer, falsely created evidence that was used against Plaintiff in his prosecution. (Am. Compl. ¶ 22). Specifically, Plaintiff alleges that Franco falsely told the Kings County District Attorney's Office that Plaintiff had engaged in a drug sale. (*Id.* ¶ 20). Plaintiff was prosecuted and confined as a result. (*Id.* ¶ 20–21). As such, Plaintiff has plausibly alleged the denial of the right to a fair trial against Defendant. *See Buari*, 530 F. Supp. at 390 (S.D.N.Y. 2021) ("These assertions, taken as true, plausibly allege the elements of a Section 1983 fair trial claim.").

\*       \*       \*

Accordingly, the Court recommends holding Defendant liable for Plaintiff's claims for violation of the right to fair trial and malicious prosecution under Section 1983, and awarding Plaintiff damages as set forth herein.

III.    Damages

"To recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by the constitutional violation." *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (internal quotation marks and citation omitted). Once proximate cause is established, the Second Circuit distinguishes between two categories of actual damages stemming from a claim of wrongful imprisonment. *Burton v. City of New York*, 630 F. Supp. 3d 586, 594 (S.D.N.Y. 2022), *adopted by* 2022 WL 9474454 (Oct. 14, 2022). The first category of damages includes those "relate[d] to the harm inherent in a loss of liberty." *Id.* The second category includes damages associated with "proof of pain, physical injury, mental suffering, humiliation, psychological deterioration, and associated medical expense." *Id.* Here, Plaintiff seeks damages that compensate him for his deprivation of liberty, including the time spent in custody, at court dates, and subject to post-release supervision. Plaintiff also seeks damages under the second category, for the "garden variety" emotional distress he suffered. (Suppl. Sub. at 1).[4] As set forth above, the Court conducted a hearing to evaluate Plaintiff's damages. (Minute Entry dated 7/19/2023; *see also* Inquest Tr.). Plaintiff's testimony was credible and, based on that testimony and the record before the Court, the Court recommends awarding Plaintiff a total of $750,000 in compensatory damages.[5]

---

[4] Plaintiff further asserts that he "suffered the loss of an opportunity to enter the merchant marines due to having a felony conviction." (Suppl. Sub. at 1). While this may be the case, Plaintiff has not provided the Court with sufficient testimony or documentary evidence to ascertain the value of such a loss, or any steps Plaintiff took to mitigate such a loss.

[5] Plaintiff separately settled this case with the City and Volpe for $175,000. (ECF No. 30; Inquest Tr. at 4:10–13). "When a plaintiff receives a settlement from one defendant, a non-settling defendant is generally entitled to have any

A. <u>Proximate Cause</u>

In order to determine an appropriate amount of damages owed to Plaintiff, the Court must first determine which of Plaintiff's injuries were proximately caused by Defendant. *See Noga*, 169 F. Supp. 2d at 89. The Supreme Court has held that Section 1983 should be read against the backdrop of tort liability, "[which] makes a man responsible for the natural consequences of his actions." *Malley v. Briggs*, 475 U.S. 335, 344–45 n.7 (1986) (quotation marks omitted) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). "The test for proximate cause is whether the defendant's actions or his failure to act were substantial factors in the sequence of causation and whether the injury is reasonably foreseeable or anticipated as a natural consequence" of the defendant's actions or his failure to act." *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83, 89 (N.D.N.Y. 2001) (quotation marks omitted). Courts must consider whether any intervening act broke the "causal chain" between the defendant's violations and the purported injury. *See Malley*, 475 U.S. at 344–45 n.7.

Here, Plaintiff asserts that his sixteen months of imprisonment, fourteen court appearances, confinement to a drug program, post-release supervision, and garden variety emotional distress were proximately caused by Defendant's actions. (Suppl. Sub. at 1; Post-Hearing Sub. at 2). The Court must consider, however, the impact of Plaintiff's own actions on the total harm. Specifically, Plaintiff absconded from the drug treatment facility at Daytop. In reality, Plaintiff spent a total of

---

judgment the plaintiff secures against them offset by the settlement amount 'as long as both the settlement and judgment represent common damages.'" *Burton*, 630 F. Supp. 3d at 598 (quoting *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)). However, "[t]he burden of establishing the extent to which a plaintiff's recovery from the non-settling defendant is duplicative of the plaintiff's recovery from the settling defendant – and the consequences for failing to satisfy that burden – fall squarely on the non-settling defendant." *Godfrey v. Soto*, No. 06-CV-0428 (NG) (JO), 2007 WL 2693652, at *7 (E.D.N.Y. July 9, 2007). By virtue of defaulting, Franco has not satisfied his burden "and should not be rewarded with a setoff of the damages paid by the settling [d]efendants." *Burton*, 630 F. Supp. 3d at 598; *see also Godfrey*, 2007 WL 2693652, at *7. Therefore, the Court will not setoff the damages against Franco by the amount Plaintiff received in the previous settlement.

approximately four months at Daytop. (*See* Inquest Tr. at 15:20–16:2, 17:24–18:12, 20:8–12, 20:19–21:6; Suppl. Sub. at 1). Plaintiff spent a total of approximately three months on Rikers Island while his prosecution was pending and while awaiting his second transfer to Daytop. (*See* Am. Compl. ¶¶ 20, 23; Inquest Tr. at 15:20–16:2, 20:8–12). It was only after Plaintiff absconded from Daytop for the second time that he was sentenced to one-and-a-half years of jail time followed by post-release supervision. (*Id.* at 22:10–19).

Plaintiff argues that because it was natural and foreseeable that Plaintiff might serve time in prison as a result of the false felony charges levied against him, the fact that Plaintiff's actions contributed to his serving jail time does not change the causation analysis. (Post-Hearing Sub. at 2). The Court cannot endorse this view. By the Court's assessment, Plaintiff's actions were intervening events that broke the casual chain between Defendant's violation and the resulting injury. *See Malley*, 475 U.S. at 344–45 n.7. It was not natural or foreseeable that, following Defendant's actions, Plaintiff would twice abscond from the agreed-upon drug treatment program and thereby receive a prison sentence. Therefore, the Court should not hold Defendant responsible for Plaintiff's sixteen months of imprisonment, all fourteen court appearances, and post-release supervision.

However, the Court accepts that, even if Plaintiff did not abscond, he would have spent at least twelve months at Daytop. It was therefore natural and foreseeable that Plaintiff would be confined for one year, and that he might spend additional time on Rikers Island while awaiting his prosecution and his transfer. The Court further accepts that Defendant's violations proximately caused Plaintiff to appear for several court appearances. Therefore, the Court recommends holding Defendant responsible for Plaintiff's wrongful confinement of twelve months, plus an additional

three months on Rikers Island, and accounting for Plaintiff's appearance at several court dates and the emotional distress he experienced.

B. Loss of Liberty

Damages for loss of liberty seek to compensate an individual's "denial of free movement and the violation done to [an individual's] dignity as a result of the unlawful detention." *Gardner v. Federated Department Stores. Inc.*, 907 F.2d 1348, 1353 (2d Cir. 1990). "Damages attributable to loss of liberty include damages for the loss of the fundamental right to be free, lost opportunities to engage in everyday activities while confined, and for the mental anguish that accompanies the loss of liberty." *Peacock v. City of Rochester*, No. 13-CV-6046, 2016 WL 4150445, at *2 (W.D.N.Y. Aug. 5, 2016) (citation omitted). The Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty." *Addington v. Texas*, 441 U.S. 418, 425 (1979) (holding that involuntary commitment to a mental hospital constitutes deprivation of liberty).

The Court determines compensatory damages for loss of liberty by considering a reasonable range of awards in comparable cases. *See Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017). The amount in damages varies, even among plaintiffs that have been incarcerated for similar periods of time, depending on each plaintiff's individual circumstances and course of imprisonment. *Burton*, 630 F. Supp. 3d at 594.

> Among the many circumstances courts have considered are the stigma attached to the type of conviction, whether the individual was held in a juvenile or adult facility, whether the individual previously was incarcerated, the presence or absence of a significant criminal history prior to the unjust conviction, whether the plaintiff sustained physical abuse while incarcerated, the extent to which the plaintiff claims future or only past pain and suffering, and whether the alleged conduct of the defendants was caused by negligent acts or omissions or intentionally.

*Id.* at 595. Based on the Court's review of case law in this Circuit, an award in the range of $500,000 to $1 million for each year of incarceration is typically considered reasonable. *See Restivo*, 846 F.3d at 587 (affirming award of $1 million per year of wrongful incarceration (per plaintiff) for two men who spent eighteen years in prison for the rape and murder of a sixteen-year-old girl); *King v. Macri*, 993 F.2d 294, 297 (2d Cir. 1993) (affirming $75,000 award for plaintiff who was incarcerated for two months, subjected to regular strip searches, and stood trial for the false charges); *Ismail v. Cohen*, 899 F.2d 183, 185–87 (2d Cir. 1990) (affirming award of $650,000 where plaintiff was unjustly confined for sixty hours and then tried and acquitted on three criminal counts, where defendant police officer "gave materially false testimony and admitted that, although he never even read the criminal complaint, he had sworn to its accuracy"); *Burton*, 630 F. Supp. 3d at 594–95 (affirming award of $1 million for each year of wrongful incarceration); *Crews v. Cnty. of Nassau*, 149 F. Supp. 3d 287, 299 (E.D.N.Y. 2015) (affirming award of $175,000 for 125 days of wrongful incarceration); *McClellan v. Smith*, No. 02-CV-1141 (GLS) (DRH), 2009 WL 3587431 (N.D.N.Y. Oct. 26, 2009) (affirming award of $150,000 in compensatory damages for plaintiff who was falsely imprisoned for seven days and maliciously prosecuted for over a year).

Here, Plaintiff's deprivation of liberty is significant. Plaintiff was only twenty-four years old at the time that he was arrested and pled guilty to a narcotics felony. (Am. Compl. ¶ 23). That narcotics felony remained on Plaintiff's record for sixteen years, until Defendant's misconduct was discovered. (*Id.* ¶ 23–24). Plaintiff had not been previously convicted or incarcerated. (Inquest Tr. 8:12–16). Beginning from his arrest and continuing throughout his confinement, Plaintiff was subject to frequent strip searches. (Id. at 17:10–22). While on Rikers Island, Plaintiff was regularly assaulted, including by staff and inmates. (*Id.* at 23:6–25:8). One such assault resulted to immense

13

bruising to Plaintiff's eye. (*Id.* at 25:4–8). Notably, Defendant's violations, as pled, amount to intentional and egregious conduct. (*See* Am. Compl. ¶ 21). As set forth above, the Court considers Plaintiff's deprivation for a period of approximately fifteen months. Accordingly, the Court recommends awarding Plaintiff compensatory damages of $650,000 for his loss of liberty.

    C.  <u>Emotional Distress</u>

       Claims of emotional injuries "are classified as either garden[] variety, significant or egregious, with the amount of damages awarded dependent on the classification." *Shuford v. Cardoza*, No. 17-CV-6349 (JRC), 2023 WL 2706255, at *11 (E.D.N.Y. Mar. 30, 2023). Claims of garden variety emotional distress are typically supported by plaintiff's own testimony. *Id.* In those cases, the Court may also consider the "objective circumstances of the violation[s] itself" in determining a reasonable award. *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002). "[G]arden variety emotional distress claims generally merit $30,000 to $125,000 awards[.]" *EEOC v. United Health Programs of Am., Inc.*, No. 14-CV-3673 (KAM) (JO), 2020 WL 1083771, at *13 (E.D.N.Y. Mar. 6, 2020) (internal quotation marks and citation omitted)

       Plaintiff alleges that he should be awarded at the "high end of the range" for the garden variety emotional distress he suffered. (Suppl. Sub. at 2). The Court agrees. At the July 19, 2023 hearing, Plaintiff expressed feeling "helpless" when he was advised that he faced confinement for the charges brought. (Inquest Tr. at 13:16–20). Plaintiff broke down into tears when describing Daytop's conditions, stating that they were "terrible," "heavy," and "hard." (*Id.* at 16:15–17:23). Plaintiff described his time on Rikers Island as "the worst part of [his] life to this day." (*Id.* at 23:24–24:18). He further stated that, while there, he spent every second of every day worried for his safety. (*Id.* at 25:23–26:3). The Court observed Plaintiff's reluctance in rehashing his trauma

at the hearing. In describing his feelings regarding his confinement, Plaintiff summarized: "My life should have been different." (*Id.* at 36:15–37:9). The trauma Plaintiff described, stemming from his arrest and his time at Daytop and Rikers Island, is supported by the objective circumstances of Defendant's violations. *See Williams v. Marinelli*, No. 13-CV-1154 (MPS), 2017 WL 11473740, at *19 (D. Conn. Feb. 8, 2017) (nature of misconduct by Connecticut Department of Correction officials supported plaintiff's claims of trauma). Accordingly, the Court recommends awarding Plaintiff $100,000 in compensatory damages for emotional distress. *See Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 208 (2d Cir. 2014) (ordering remittitur or new trial on damages on malicious prosecution claim unless plaintiff accepted award of $100,000 for past emotional harm and $20,000 in future emotional harm); *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (approving award for $100,000 for "garden variety" emotional distress in hostile work environment and intentional infliction of emotional distress case).

IV.    <u>Attorneys' Fees</u>

A district court has broad discretion to determine the reasonable amount of attorneys' fees to be awarded. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 183, 190 (2d Cir. 2008). Courts in this Circuit calculate the presumptively reasonable attorneys' fees as the product of a reasonable hourly rate and hours reasonably expended on the litigation. *Torres v. 894 Dekalb Pizza Corp.*, No. 19-CV-5750 (AMD) (SMG), 2020 WL 8768258, at *9 (E.D.N.Y. Dec. 28, 2020) (citing *Arbor Hill*, 522 F.3d at 183), *adopted by* 2021 WL 848849 (Mar. 5, 2021). Plaintiff seeks a total of $34,130.50 in attorneys' fees. In support of this application, Plaintiff's counsel detailed their backgrounds and legal experience. (Suppl. Sub. at 2–4). Plaintiff also provided an invoice detailing the contemporaneous billing of each attorney and

paralegal. (ECF 42-1 ("Invoice")). For the reasons set forth herein, I recommend awarding Plaintiff $23,374 in attorneys' fees.

A. Reasonable Hourly Rates

Courts generally use the prevailing hourly rates in the district in which they sit. *Frederic v. Commonwealth Fin. Sys., Inc.*, No. 15-CV-03811 (PKC) (MDG), 2016 WL 1383488, at *1 (E.D.N.Y. Apr. 7, 2016) (citing *Arbor Hill*, 522 F.3d at 190). In this district, hourly rates "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." *Perrone v. Amato*, No. 09-CV-316 (SIL), 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022). "In cases where higher rates have been approved, the parties applying for fees have supported the hourly rate claimed with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter." *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20 CV 2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *adopted by* 2023 WL 1070615 (Jan. 27, 2023) (citing *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769 (RER), 2022 WL 4078150, at *32 (E.D.N.Y. Sept. 6, 2022) (finding $500 to be a reasonable rate for "a highly experienced civil rights attorney who has been practicing law since 1986, and has been engaged in his own legal practice"); *U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. 10-CV-4819 (LDW) (AKT), 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015) (justifying hourly rates of $500 and $600 because "they reflect[ed] the skill, quality, and experience of the attorney, as well as the degree of specialization required by this case"); *see also HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867 (MKB) (VMS), 2023 WL 5441898, at *5 (E.D.N.Y. Aug. 22, 2023), adopted by 2023 WL 6035673 (Sept. 15, 2023) ("Courts in this District have recently awarded hourly rates ranging from the 'high $500s' to the 'low $600s' to [experienced] civil rights attorneys.").

Here, Plaintiff requests that his counsel be compensated at the following hourly rates: $650 for Brett Harris Klein, Esq. ("Klein"), $400 for Lissa Green-Stark, Esq. ("Green-Stark"), and $100 for paralegal time. (Suppl. Sub. at 3). By way of background, Klein graduated from Brooklyn Law School in 1997. (*Id.*). He worked as an Assistant Corporate Counsel and then as a Senior Counsel in the New York City Law Department, as a founding partner at Leventhal & Klein, LLP ("LK"), and since 2015 as the founding partner and owner of Brett H. Klein, Esq., PLLC ("Klein Civil Rights" or "KCR"). (*Id.*). He has extensive experience litigating civil rights cases in federal and state court. (*Id.* at 2–3). Green-Stark graduated from Boston University School of Law in 2008. (*Id.* at 2). Upon graduating, she worked at Batiste Aronowsky & Suchow, Staten Island Legal Defense Services, and then joined LK as an associate in 2011. (*Id.*). She joined KCR in 2015, where she was elevated to partner in 2019. (*Id.*). Green-Stark likewise has extensive experience litigating civil rights cases in federal and state court. (*Id.* at 2–3).

The Court finds Klein is entitled to a reduced hourly rate of $550 while Green-Stark is entitled to the requested rate of $400. These somewhat higher rates are appropriate given the attorneys' experience and given the specialized nature of their work on this case, which involved Plaintiff's testimony at an inquest hearing and multiple post-hearing submissions containing legal arguments on complex issues. *See e.g., Agudath Israel of Am. v. Hochul*, No. 20-CV-4834 (KAM) (RML), 2021 WL 5771841, at *9 (E.D.N.Y. Dec. 6, 2021), *aff'd*, No. 22-38, 2023 WL 2637344, at *3 (2d Cir. Mar. 27, 2023) (finding no abuse of discretion in the district court's decision to award "the highest rates to some of Plaintiffs' counsel and rates at the upper end of prevailing market rates to others," the reasoning underlying which included "that a relatively higher fee award is arguably warranted based on the importance and complexity of the case, the degree of Plaintiffs' success, and the qualifications of their attorneys") (citations and quotation marks omitted*)*. In

17

addition, the Court finds the rate of $100 for paralegal time to be reasonable. *See JTH Tax LLC v. Sanchez*, No. 22 Civ. 6160 (AS) (JLC), 2023 WL 6813449, at *6 (S.D.N.Y. Oct. 16, 2023) (approving paralegal rate of $125); *Rivera v. ABM Indus., Inc.*, No. 22-CV-1232 (EK) (PK), 2023 WL 6850327, at *4 (E.D.N.Y. Sept. 29, 2023) ("The reasonable hourly rates for paralegals are between $70.00 and $100.00."), *adopted by* 2023 WL 6845866 (Oct. 17, 2023). Therefore, the Court recommends awarding attorneys' fees at the aforementioned rates.

### B. Reasonable Hours Expended

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Crews*, 2019 WL 6894469, at *7 (quoting *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06 Civ. 7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) ("A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed.").

Plaintiff has submitted contemporaneous time records in connection with the work performed on this case. (Invoice). These records generally reflect the hours expended, the work performed, and the billing rates applied. (*Id.*). Plaintiff's counsel purports to have spent a total of 67.68 hours on this case. (*See id.*). This work includes not only the time spent drafting, filing, and serving the Summons and Complaint and on this Motion and in preparing for the inquest hearing, but also the time spent litigating the case against the non-defaulting defendants. (*See id.*). That work included, for example, drafting discovery requests and preparing for and attending

depositions. (*See id.*). "Courts are reluctant to require a non-settling defendant to bear the full burden of attorney's fees where co-defendants have settled." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-CV-2568 (JG) (SMG), 2012 WL 1414872, at *13 (E.D.N.Y. Jan. 20, 2012). The result could allow some defendants to settle their case at a discount, while requiring the defaulting defendants to "subsidize the difference." *Id.* "Such an apportionment overlooks the fact that plaintiff should, and likely did, factor its attorney's fees into the settlements it reached with certain defendants." *Id.* It is true that here, Plaintiff's claims against Franco, and therefore the discovery necessary on those claims, are intertwined with the claims against the City and Volpe. (*See* Am. Compl. ¶¶ 36–44). Nevertheless, a reduction of the attorney hours expended is warranted, in order to avoid any unequitable burden on Defendant. Accordingly, the Court recommends applying a twenty-five percent reduction to the requested hours, resulting in a total of 53.99 hours.

*     *     *

The Court therefore recommends awarding $23,374 in attorneys' fees, calculated as follows:

| Individual | Hourly Rate | Reduced Hours | Billable Amounts |
|---|---|---|---|
| Brett Harris Klein, Esq. | $550 | 23.04 | $12,672 |
| Lissa Green-Stark, Esq. | $400 | 26.43 | $10,572 |
| Paralegal | $100 | 1.30 | $130 |
| | | | **Total: $23,374** |

## V.   Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "To recover . . . , plaintiffs are required

to "submit adequate documentary evidence in support" of those costs. *See Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Where plaintiffs fail to submit documentary evidence of costs, the Court may deny the awarding of such costs. *See Tacuri*, 2015 WL 790060, at *14 (denying awarding of costs when plaintiffs failed to submit any documentary evidence supporting a request for $108); *Kingvision Pay–Per View, Ltd. v. Castillo Rest. Corp.*, No. 06-CV-617 (RJD) (KAM), 2007 WL 841804, at *7 (E.D.N.Y. Jan. 16, 2007) (denying awarding of costs when plaintiff failed to submit any documentary evidence supporting a request for $150). However, "a court can take judicial notice of the court's filing fee and award it" when the filing fee appears on the docket. *Cardoza*, 2015 WL 5561033, at *19. Here, Plaintiff seeks to recover $1,768.85 in costs, but does not provide any documentary evidence in support of these costs. That said, a $402 filing fee appears on the docket. (ECF No. 1). Accordingly, I respectfully recommend that the Court award Plaintiff $402 in costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Motion for Default Judgment be granted, that default judgment be entered against Defendant Franco, and that Plaintiff be awarded a total of $750,000 in damages, plus $23,776 in attorneys' fees and costs. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Brian M. Cogan within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

Hon. Ramon E. Reyes, Jr.   Digitally signed by Hon. Ramon E. Reyes, Jr.
Date: 2023.11.09 16:02:08 -05'00'

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: November 9, 2023
       Brooklyn, NY