```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   DAVID ALSTON,                                            :
                                                            :
                                 Plaintiff,                 :
                                                            :   MEMORANDUM DECISION AND
                  -against-                                 :   ORDER
                                                            :
   CITY OF NEW YORK, JOSEPH FRANCO,                         :   22-cv-5395 (BMC)
   JOHN VOLPE, and JOHN AND JANE DOE                        :
   1 THROUGH 10,                                            :
                                                            :
                                 Defendant.                 :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is an action for false arrest, malicious prosecution and denial of a fair trial under 42 U.S.C. § 1983. Two of the three named defendants having settled, the remaining defendant is the infamous Joseph Franco, a former detective with the New York City Police Department who was indicted on twenty-six criminal counts of perjury and official misconduct based on video footage showing that he had testified falsely to several false arrests. Although he was ultimately acquitted of those charges, the District Attorneys' Offices in Brooklyn, Manhattan, and the Bronx moved successfully to vacate hundreds of convictions in which Franco had been involved by either testifying against defendants or signing off on criminal complaints, including that of our plaintiff here, and Franco was thereupon fired from the NYPD.

Franco defaulted in this action. The Clerk entered Franco's default, and I referred plaintiff's motion for a default judgment to a Magistrate Judge for an inquest on damages. After the Magistrate Judge issued his Report and Recommendation, Franco objected. Franco's objection, however, simply sought to vacate the default; it did not challenge any other aspect of

the R&R. I accordingly instructed Franco to move under Rule 55(c) to vacate the default. That motion is before me now.

In support of his motion, Franco has submitted no evidence whatsoever that he has a meritorious defense. All he has done is demonstrate, at most, that he didn't realize he had been served, and accordingly didn't respond to the complaint, because of miscommunication between himself, his lawyer, and the City of New York. But with plaintiff vehemently denying that he had drugs on him when Franco arrested him, and Franco not giving any contrary version of those determinative facts, re-opening this case would lead us right back to where we are now. Franco's motion to vacate is therefore denied, and the R&R is adopted as the Order of this Court.

## BACKGROUND

The amended complaint sets forth that plaintiff was arrested based on an alleged hand-to-hand drug exchange with Franco on May 15, 2005. Plaintiff was arraigned on three counts, including one Class B felony. Out of fear of a lengthy sentence due to the Class B felony, plaintiff pled guilty to a lesser charge in 2005. He was imprisoned in various facilities from May 2005 through April 2008 when he began supervision.

At the inquest before the Magistrate Judge, plaintiff testified in detail about how he had been arrested at the end of a basketball tournament game and charged with a drug sale without any idea of why he had been singled out. He vigorously denied possessing any drugs, giving drugs to anyone, or using drugs.

In 2021, years after plaintiff completed serving his sentence and parole, Franco's misdeeds were discovered. The Brooklyn District Attorney moved to vacate plaintiff's conviction, and the indictment and conviction lodged against him were dismissed and sealed by Order of a Justice of the Supreme Court, Kings County. Plaintiff then brought this action.

## DISCUSSION

### I.     Legal Standard

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b)(1), in turn, provides that a default judgment may be set aside due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Second Circuit has held that three factors govern a district court's decision to set aside an entry of default or a default judgment under Rule 55(c) or 60(b): "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004). These factors are applied more leniently when the issue is an entry of default instead of a default judgment. Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2692 (4th ed. 2021). Although resolution of cases by default is disfavored, the preference for resolving disputes on the merits does not go so far as to relieve the defendant from the burden of proving the applicable factors. See Sony Corp. v. Elm State Elecs., 800 F.2d 317, 320 (2d Cir. 1986).

As the text of the Rules suggests and the applicable case law provides, "[t]he dispositions of motions for [relief from] defaults and default judgments ... are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil, 10 F.3d at 95. The scope of this discretion, however, is limited by the Second Circuit's "oft-stated preference for

resolving disputes on the merits." Id. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Id. at 96. Nevertheless, the Second Circuit has recognized that default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." Id.

## II.   Willfulness

In the default context, willfulness is not limited to purposefulness; a default is willful whenever it is "egregious and ... not satisfactorily explained." Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182 (2d Cir. 2015). For instance, district courts have held that a default is willful when the defendant provides no justification for the failure to respond. See, e.g., Geis Const. S., LLC v. Delahunt, No. 20-cv-3834, 2023 WL 2731692, at *6 (E.D.N.Y. March 13, 2023). And "[a]lthough more than mere negligence is required, 'the degree of negligence in precipitating the default is a relevant factor to be considered.'" Jaramillo v. Vega, 675 Fed. App'x 76, 77 (2d Cir. 2017) (quoting New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005)).

Here, Franco provides a tenuous justification for why he did not receive plaintiff's summons and complaint, and he provides no justification for why he was unaware of the proceedings. Franco does not contend that service was invalid. It was made upon the NYPD as his designated agent. His contention, instead, is that, through a series of mistakes, he did not have notice that he had been served.

4

The affidavits Franco has submitted with his motion reflect that plaintiff attempted to serve Franco through the NYPD less than a month after commencement of this lawsuit. Since Franco was no longer an NYPD employee, the NYPD could not accept service on his behalf without his consent. However, pursuant to NYPD policy, it advised Franco by letter dated October 22, 2022 that (1) he had been sued in this case (naming the case, court and index number); and (2) he could, at his option, designate the Deputy Commissioner of Legal Matters of the NYPD as his agent for service of process for this action and future actions. Right there, the letter gave Franco notice that he had been sued in this action.

Franco made the designation, providing his personal address and the address of his union attorney (who has since appeared for him on this motion to vacate). The Deputy Commissioner has explained in his affidavit that, when this happens, its practice and policy is to forward the summons and complaint to the former police officer. Although the Deputy Commissioner cannot testify with "absolute certainty" whether or when his office sent the summons and complaint to Franco, it certainly does appear that it did, as the Deputy Commissioner has confirmed that on January 4, 2023, Corporation Counsel advised Franco in writing that it was declining to represent him in this case and that he should get union or other counsel to represent him. That letter was sent to Franco at the addresses reflected in his designation form.

His attorney, however, cannot find a record of having received that mailing, and neither can Franco. Nevertheless, Franco contends that, since what happened appears to be a mistake (or up to three mistakes), his default was not willful.

Especially considering the timing, to accept that Franco or his attorneys never received the service documents requires accepting an awful lot of "coincidences." Franco speculates that maybe the Deputy Commissioner never sent him the summons and complaint, but that is belied

5

by the fact that Corporation Counsel obviously got the documents. Or maybe, he asserts, the mailing from the Deputy Commissioner to both him and his attorney got lost in the mail. The mailings were sent to the proper addresses, but somehow, according to Franco, they both just disappeared. Or, Franco goes on, maybe the Deputy Commissioner never forwarded them. Beyond these coincidences, however, he has offered no facts sufficient to rebut the presumption in favor of the regularity of mailing under New York law. See Ma v. Merril Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 92 (2d Cir. 2010).

Even if I were to set aside the issue of whether he received the summons and complaint, Franco has documented no action that he or his attorney took to follow up on this suit once the Deputy Commissioner advised him on October 22, 2022 that he had been sued by Alston. It doesn't look like he or his attorneys conducted a simple PACER search to ascertain the status of the docket. That's quite an omission considering Franco's history – unsurprisingly, he has been sued in numerous other lawsuits based on similar allegations to those alleged here, and he has moved to vacate defaults in at least several of them, represented by the same counsel as in this case. See Clerk's Certificate of Default, Furet v. City of New York, No. 22-cv-03172 (S.D.N.Y. January 10, 2023); Clerk's Entry of Default, Joyner v. City of New York, No. 22-cv-3946 (E.D.N.Y. February 1, 2023); Clerk's Certificate of Default, Crespo v. City of New York. No. 22-cv-7345 (S.D.N.Y. March 10, 2023). Considering Franco's notoriety, some kind of system should have been in place to make sure that plaintiff, the Magistrate Judge, and this Court didn't have to undertake the rather substantial efforts which Franco contends should be for naught.

A defendant willfully defaults when he provides the court with only "flimsy reasons" explaining his failure to appear. SEC v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998). Franco's tale of how the summons and complaint were conveniently lost in the mail, coupled with his

6

inability to explain why he took no further action after receiving the Deputy Commissioner's letter, is far-fetched. Cf. Jaramillo, 675 F. App'x at 77 (a defendant willfully defaulted despite his belief that the "numerous documents he had received from the court" related to a separate . . . claim"). At the very least, Franco acted with a degree of negligence that I must weigh against him. Id.

### III.     Prejudice

Assessing "prejudice" in the default context concerns only prejudice to the plaintiff. See Wright and Miller, 10A Fed Practice and Proc. § 2699; Enron, 10 F.3d 90 at 96. This is not a commercial case where invoices have to be added up to see how much the plaintiff has lost. We are dealing with someone who was subject to a wrongful conviction and served jail time as a result of defendant's misconduct. And as bad as that was, he had to relive it all over again in his testimony before the Magistrate Judge. Even a reading of the cold transcript shows how traumatic it was for plaintiff to have to testify. Granting the instant motion would mean that plaintiff undertook that testimony for no reason as he would have to relive the experience again at another hearing or even a jury trial. That is serious prejudice that weighs against granting Franco's motion.

Although prejudice is measured from the plaintiff's perspective, the Second Circuit has cautioned that the equities must be balanced on a motion to vacate a default, *i.e.*, "whether the entry of default would bring about a harsh or unfair result" to the defaulting party. Enron, 10 F.3d at 96. Franco contends that acceptance of the R&R would be "ruinous" to his finances. He has not submitted any proof of his finances, but I will assume that a judgment this size would be more severe than they would allow. That does not necessarily work in favor of this motion, however, because plaintiff cannot get blood out of a stone. That is, a judgment here would leave

7

Franco with "debtor's leverage" to effect a resolution with plaintiff else plaintiff might stand to recover little or nothing. Moreover, to the extent that leverage does not prove useful, Franco has not explained – since he has failed to show a meritorious defense, see Point IV infra – what the difference is between having a default judgment now or having a judgment in a similar amount entered after a trial.

His contention that, in other cases, he has been allowed to contribute between $500-$1000 towards the settlement, much less than the R&R recommends here, is not persuasive. The City has apparently been willing to back him up in those cases; it was not here. (Indeed, in settling this case, the City did not even contact him to let him know that it was settling without him.) It is speculative that this plaintiff would accept so limited a contribution from the police officer who was the motivating force behind his false arrest and imprisonment and the rather extreme suffering to which he testified at the inquest.

At most, there are equities that point both ways.

## IV. Meritorious Defense

The Second Circuit has made clear that "the absence of [a meritorious] defense is sufficient to support [a] district court's denial" of a motion to set aside a default. Green, 420 F.3d at 109 (quoting State Street, 374 F.3d at 174). Here, then, neither the willfulness of Franco's default nor the extent to which it prejudiced him matter as much as Franco's ability to present a meritorious defense.

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Am. All. Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (cleaned up). "Though defendant seeking to vacate an entry of default must present some

8

evidence beyond conclusory denials to support his defense," the district court must measure evidence presented "not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Addison v. Reitman Blacktop, Inc., 272 F.R.D. 72, 81 (E.D.N.Y. 2010) (quoting Enron Oil, 10 F.3d at 98). Consistent with the broad discretion vested in district courts on motions to vacate defaults, there is no single standard defining how robust a showing of a meritorious defense the movant must put forward. See Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2697 (4th ed. 2021). Most courts decline to accept conclusory statements, but beyond that, the degree of proof required varies depending on the facts of the case. Id.

Franco has not satisfied any conceivable standard here, no matter how lenient towards defaulting parties. The issue in this case is straightforward – plaintiff accuses Franco of fabricating evidence that was used to arrest, prosecute, and ultimately imprison him. Plaintiff has testified in detail at the inquest before the Magistrate Judge, consistent with his pleadings, that this is exactly what happened.

In moving to vacate the default against him, Franco's version of the encounter is that – wait, he offers no version of the encounter. Despite submitting an affidavit in support of the motion, Franco has not denied that he fabricated the story of the drug transaction, nor has he asserted that plaintiff did, in fact, engage in a drug transaction with him. Had he done so in a non-conclusory way, there would clearly be a factual issue requiring resolution, *i.e.*, a meritorious defense. But his affidavit is limited to the issue of whether he had notice of this lawsuit. It does not mention the central issue in this case. Instead, his brief relies on the fact that plaintiff originally took a plea to a reduced charge, and the District Attorney, in moving to vacate the plea, did not concede that the prosecution had been based on fabricated evidence. Rather, the

District Attorney simply stated that he would not oppose the motion to vacate the conviction "as a matter of prosecutorial discretion."

That is too thin a reed to constitute a meritorious defense. Consider where its acceptance would leave us. On either a summary judgment motion or at trial, plaintiff would submit clear, uncontradicted testimony, as he did at the inquest, of the circumstances surrounding his arrest, that he did not engage in a drug transaction, and that, facing an extraordinarily long sentencing exposure, he took a plea deal for a short sentence on a lesser charge. Evidence would be added to that about the circumstances of Franco's separation from the NYPD – that he gave fraudulent evidence in numerous cases. And then Franco would offer nothing except the fact that plaintiff had pled guilty to a lesser offense, which plea was vacated and sealed when Franco's misconduct was exposed. Indeed, the District Attorney's self-serving reservation on the fabricated evidence point is almost certainly not admissible. See Fed. R. Evid. 801.[1] Such a showing would be far from a "complete defense." Addison, 272 F.R.D. at 81.

It doesn't take much to raise a meritorious defense on a motion to vacate a default, but when defendant cannot describe a plausible scenario in which he prevails on the merits, then a meritorious defense has not been demonstrated. That is the case here.

## V.    Vacatur Under Rule 55(b)(2)

Franco's final point is that the default should be vacated under Fed. R. Civ. P. 55(b)(2). That rule provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). Of course,

---

[1] Franco's brief suggests that former defendant Volpe might be able to establish that there was probable cause to arrest plaintiff. But he did not submit an affidavit from Volpe. And if that was impractical for some reason, he could have obtained Volpe's testimony by deposition or at a hearing which he did not request. In fact, the absence of any effort to obtain evidence from Volpe is itself indicative of the lack of a meritorious defense.

the language of the rule itself shows Franco's problem – he never "appeared personally or by a representative" in this action and thus had no right to notice. This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind.

To get around that limitation, Franco comes up with a novel theory. There was another case – the Joyner case – in which another plaintiff, represented by the same attorney representing plaintiff in this case, also sued Franco for fabricating evidence, and in which Franco had also defaulted. In that case, the Detectives Endowment Association had first declined to appoint counsel to defend Franco, which was one reason the matter had gone into default. The Association then changed its mind and appointed the same counsel as is representing Franco in this case.

Franco now contends that since plaintiff's counsel, acting in the Joyner case, knew that the DEA had changed its mind and appointed counsel in Joyner, *plaintiff's counsel incurred a duty in this case* to advise defense counsel in Joyner of Franco's default here under Rule 55(b)(2), and the failure to give notice of the motion for a default judgment renders it improper.

Based on my finding above that Franco and his attorney were at least partially responsible for the default because they did not monitor the docket was Franco was advised that the action had been commenced, Franco's Rule 55(b)(2) argument turns the question of duty on its head. Plaintiff's counsel had no way to know which cases the DEA was agreeing to defend and which ones it was not. Franco, on the other hand, had received notice of this lawsuit at least from Corporation Counsel for the City and did nothing to check into what was happening.

11

In any event, there is no basis for imposing such a duty, derived from an unrelated case, on plaintiff's counsel.  The dated, out-of-circuit case that Franco cites for this proposition involved two suits with "identical parties and issues."  Gomes v. Williams, 420 F.2d 1364, 1365 (10th Cir. 1970).  Here, by contrast, plaintiff has no connection to any of the other civil suits against Franco.  And the cases within this Circuit make clear that plaintiff had no duty to notify defendant.  See Green, 420 F.3d at 106.  By moving to vacate a default in a separate action by an unrelated plaintiff, Franco did not "express a clear intention to defend" here.  Id.

## CONCLUSION

Defendant's motion to vacate the entry of default is denied.  The Report and Recommendation of the Magistrate Judge is accepted as the Order of this Court, and plaintiff's motion for a default judgment is granted.  The Clerk is directed to enter judgment for plaintiff against defendant Joseph Franco in the amount of  $750,000.00 in damages plus $23,776.00 in attorneys' fees and costs.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       September 4, 2024